UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-81215-CIV-HURLEY/HOPKINS

**SUPREME FUELS TRADING FZE,**

    **Plaintiff,**

**v.**

**HARRY SARGEANT III, et al.,**

    **Defendants.**

_____/

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** is before the court upon defendants' motion to dismiss [DE # 19]. For the reasons expressed below, the court will grant the motion in part and deny the motion in part.

#### BACKGROUND

This is a suit brought under the RICO Act and the Clayton Act alleging a conspiracy to bribe and improperly influence Jordanian government officials to exclude other companies from competition for contracts to supply fuel to the U.S. military in Iraq. The suit also alleges violations of the Florida Antitrust Act, the Florida Deceptive and Unfair Trade Practices Act, and Florida common law.

This case involves numerous parties from different regions of the world. Plaintiff Supreme Fuels Trading FZE ("Supreme") is incorporated in the United Arab Emirates and specializes in providing military support services, such as fuel, food, and heavy equipment, to developing regions of the world. *See* Am. Compl. ¶¶ 10-11. Defendant International Oil Trading Company, LLC

("IOTC") is based in Boca Raton, Florida and was formed by defendant Harry Sargeant III ("Sargeant") and defendant Mustafa Abu-Naba'a ("Abu-Naba'a") for the purpose of supplying fuel to the U.S. troops in Iraq. *See id.* ¶ 13. Defendant International Oil Trade Center Jordan ("IOTC Jordan") is a Jordanian company founded by Sargeant, Abu-Naba'a, and Mohammad Anwar Farid Al-Saleh ("Al-Saleh") for the purpose of supplying fuel to the U.S. troops in Iraq. *See id.* ¶ 16.

After beginning its military campaign in Iraq in 2003, the U.S. military undertook efforts to find a secure and reliable source of fuel to supply the troops in Iraq. *See id.* ¶ 19. The Department of Defense's Defense Energy Support Center (the "DESC") was tasked with the responsibility of procuring contracts for this fuel supply through a competitive bidding process. *See id.* ¶ 20. The bidders were required to deliver the fuel to Iraq through Jordan. *See id.* ¶21.

Jordan agreed to allow the transport of fuel within its borders, but imposed certain conditions, including a requirement that any contractor transporting oil through Jordan obtain a letter of authorization ("LOA") from the Jordanian government. *See id.* ¶¶ 2, 21. The DESC therefore required that, as a condition of bidding on and obtaining a contract to supply fuel through Jordan, a contractor obtain a LOA from the Jordanian government. *See id.* ¶ 21.

In January 2004, Sargeant and Abu-Naba'a formed IOTC Jordan for the purpose of obtaining lucrative fuel supply contracts from the DESC. *See id.* ¶ 20. Sargeant and Abu-Naba'a allegedly recruited Al-Saleh, a citizen of Jordan with extensive contacts with key members of the Jordanian government, to help secure a LOA and manage relations with the Jordanian government. *See id.* ¶ 22. Al-Saleh allegedly used his connections to not only secure a LOA, but also forge an illegal agreement with Jordanian officials to exclude all other companies from obtaining LOA's, resulting in the alleged illegal conspiracy on which this litigation centers. *See id.* ¶ 22-25. In exchange for

2

his efforts, Al-Saleh was given a one-third interest in IOTC Jordan. *See id.* ¶ 25. The alleged conspiracy called for the defendants to make regular payments based on a special formula to certain Jordanian officials for the exclusive LOA. *See id.* at ¶ 25.

In April 2004, the DESC accepted IOTC Jordan's bid to supply fuel and awarded IOTC Jordan a contract worth over $80 million. *See id.* ¶ 24. However, as a result of the alleged conspiracy, the contract award was not the result of competitive bidding. *See id.* ¶ 25. On the contrary, IOTC Jordan's bids were much higher than its competitors; but since IOTC Jordan was the only eligible bidder with a LOA, the DESC had no option but to agree to an inflated price under a monopoly contract. *See id.* ¶¶ 26-28. IOTC Jordan was later awarded a second and third contract, again using its monopoly powers to charge excessive rates. *See id.* ¶ 26, 32. The second and third contracts were worth roughly $150 and $700 million, respectively. *See id.*

In January 2005, Sargeant and Abu-Naba'a surreptitiously formed another company, IOTC, with a name similar to IOTC Jordan and an identical acronym. *See id.* ¶ 30. IOTC was allegedly formed for the purpose of cheating Al-Saleh out of his profits from IOTC Jordan. *See id.* ¶ 32. Without Al-Saleh's knowledge, Sargeant and Abu-Naba'a substituted IOTC for IOTC Jordan as the contracting party on the second and third contracts. *See id.* ¶ 31.

In December 2006, the DESC solicited bids on a fourth contract, worth over $900 million. *See id.* ¶ 36. The DESC awarded the contract to IOTC, even though its bid was the second highest, for IOTC was again the only bidder with a LOA. *See id.*

During the performance of the fourth contract, the relationship between the DESC and IOTC deteriorated, and the DESC solicited bids from other contractors to take over the fourth contract. *See id.* ¶¶ 39-40. In November 2007, Supreme for the first time bid to supply fuel to Iraq through

Jordan. *See id.* ¶41. The complaint alleges that Supreme was well equipped to handle the contract's requirements, and that the terms of Supreme's bid were much more favorable to the United States than IOTC's bid. *See id.* ¶¶ 10-12, 59-66. Nonetheless, the DESC informed Supreme that it could not accept its bid unless it obtained a LOA. *See id.* ¶ 42.

Supreme undertook efforts to obtain a LOA from the Jordanian government. *See id.* ¶¶ 43-47. Supreme first wrote the Jordanian government and met with government officials. *See id.* ¶¶ 43-44. Supreme then wrote King Abdullah II and met with his representatives. *See id.* ¶¶ 45-46. Supreme's efforts, however, proved to be fruitless; due to the alleged conspiracy among the defendants and certain Jordanian official, the Jordanian government never issued Supreme a LOA. *See id.* ¶¶ 47. Consequently, even though Supreme's bid was $40 million less than IOTC's, the DESC had no choice but to re-award the contract to IOTC, the only bidder with the necessary LOA, and pay inflated prices. *See id.* ¶ 48.

Supreme alleges that, absent the conspiracy among the defendants and Jordanian officials, it would have secured a LOA and would have been awarded the fourth contract, while saving the U.S. government tens of millions of dollars under the fourth contract. *See id.* ¶¶ 58-59, 71. Supreme's suit seeks both injunctive relief and treble damages. *See id.* ¶ 5. It claims damages measured by the profits it would have earned from the fourth contract. *See id.* ¶¶ 68.

## JURISDICTION

This court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1331. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to plaintiff's claim occurred in the Southern District of Florida.

## DISCUSSION

### A.    Standard on Motion to Dismiss

Granting a motion to dismiss is appropriate when a complaint contains simply "a formulaic recitation of the elements of a cause of action." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence" in support of the claim and that plausibly suggest relief is appropriate. *Id.* at 556. On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir. 1986). The threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim upon which relief can be granted. *See Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir. 1985). Regardless of the alleged facts, a court may dismiss a complaint on a dispositive issue of law. *See Marshall County Bd. Of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993).

### B.    Defendants' Motions to Dismiss

#### 1.    Service of Process and Personal Jurisdiction

##### a.    Service of Process

Abu-Naba'a challenges the sufficiency of service of process upon him under Fed. R. Civ. P. 12(b)(5). Supreme maintains that it properly served Abu-Naba'a under both Fed. R. Civ. P. 4(e)(2)(B) and 4(e)(1).

"Once a defendant challenges service of process, plaintiff has the burden to demonstrate sufficient service of process by making a prima facie case of proper service." *See Hollander v. Wolf,*

2009 WL 3336012, * 3 (S.D. Fla. 2009 Oct. 14, 2009). If the plaintiff makes a prima facie case of proper service, the burden then shifts to the defendant to demonstrate that service was insufficient. *Id*. The court may consider record evidence to resolve disputed questions of fact. *Id.*

Rule 4(e)(2)(B) permits service of process to be made upon a defendant by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." "[T]he process server's return will provide a prima facie case as to the facts of service." 5B Wright & Miller Federal Practice and Procedure Civil 3d § 1353, at 343. Here, the process server's return indicates that he left a copy of the summons and complaint with Abu-Naba'a's daughter at a condominium owned by Abu-Naba'a in Bayshore, Miami.

Since plaintiff has made a prima facie case of proper service, the now burden shifts to Abu-Naba'a to demonstrate that the service was insufficient. *See Wolf*, 2009 WL 3336012, at * 3. Abu-Naba'a has carried this burden by showing that the condominium is not his usual place of abode. *See* Abu-Naba'a Decl. ¶ 8 ("I have never lived in the condominium."). Supreme attempts to rebut Abu-Naba'a's declaration by showing that Abu-Naba'a claimed in a public filing in Jordan that Florida is his domicile. But the evidence of a public filing does not overcome the strong evidence, in the form of a declaration given under the penalty of perjury, that Abu-Naba'a has never lived at the condominium. Given the record evidence before it, the court finds that the condomium in Bayshore, Florida was not Abu-Naba'a's usual place of abode, and therefore service of process could not have properly been effected there under Rule 4(e)(2)(B).

Supreme also argues that it properly served Abu-Naba'a under Rule 4(e)(1), which permits a plaintiff to serve process in accordance with the law of the state where the actions is brought.

Plaintiff argues that it properly served Abu-Naba'a through substituted service on Florida's Secretary of State in accordance with Fla. Stat. § 48.181, one of Florida's long-arm statues. However, " in order to support substituted service of process on a defendant through the Secretary of State, the complaint must allege the jurisdictional requirements prescribed by the applicable long-arm statute." *Mecca Multimedia, Inc. v. Kurzbard*, 954 So.2d 1179, 1182 (Fla. 3d DCA 2007); *see Taverna Opa Trademark Corp. v. Ismail*, 2009 WL 1220513, *1 (S.D. Fla. Apr. 30, 1999). "The jurisdictional requirements of § 48.181 are that the defendant conducts business in Florida and is either: (1) a nonresident, (2) a resident of Florida who subsequently became a nonresident, or (3) a resident of Florida concealing her whereabouts." *Ismail*, 2009 WL 1220513 at *1. Florida's "long-arm statutes are strictly construed and require the plaintiffs to clearly bring themselves within the ambit of the statues." *Labbee v. Harrington,* 913 So.2d 679, 682-83 (Fla. 3d DCA 2005).

Here, Plaintiff's amended complaint does not allege facts that support substituted service. Plaintiff has not alleged that Abu-Naba'a is concealing his whereabouts. Nor has plaintiff alleged that Abu-Naba'a is a nonresident. On the contrary, the amended complaint states that "Defendant Mustafa Abu-Naba'a is . . . residing in Palm Beach County, Florida." *See Am. Compl.* ¶ 15. Thus, because the amended complaint does not allege a proper jurisdictional basis for substituted service of process, Supreme did not properly serve Abu-Naba'a with substituted service.

### b. Personal Jurisdiction

Abu-Naba'a moreover argues that the court lacks personal jurisdiction because he is a resident of the Dominican Republic and Jordan without sufficient minimum contacts with Florida. Supreme contends that the court has both specific and general jurisdiction over Abu-Naba'a. A federal court may properly exercise personal jurisdiction over a nonresident defendant only if the

exercise of jurisdiction comports with the state long-arm statute and the Due Process Clause of the Fourteenth Amendment. *See Posner v. Essex Ins. Co.*, Ltd., 178 F.3d 1209, 1214 (11th Cir.1999); *see also Borden v. East-European Ins. Co.*, 921 So.2d 587, 592 (Fla. 2006).

To establish personal jurisdiction over Naba'a, Supreme must "plead sufficient material facts to establish the basis for exercise of such jurisdiction." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir.2000) (per curiam). The burden then "shifts to the defendant to make a prima facie showing of the inapplicability of the statute." *Id.* If the defendant carries his burden, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Id.*

Supreme stumbles over the first step of this burden-shifting analysis in his attempt to assert general jurisdiction over Abu-Naba'a. Florida's long-arm statute allows for the exercise of jurisdiction over "[a] defendant who is engaged in substantial and not isolated activity within this state . . . whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). The allegations in plaintiff's complaint regarding Abu-Naba'a's contacts with Florida fall well short of establishing "substantial and not isolated activity within" Florida.[1] *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1275 n.16 (11th Cir. 2009). Indeed, the only allegation in the complaint regarding Abu-Naba'a's contacts with Florida is that Abu-Naba'a helped form and operate IOTC, a Florida corporation. Therefore, Supreme has failed to plead sufficient facts to support general jurisdiction.

---

[1] While Supreme's response to the motion to dismiss enumerates Abu-Naba'a's alleged extensive contacts with Florida, Supreme has failed to plead those contacts.

Supreme likewise fails to establish specific jurisdiction over Abu-Naba'a. Supreme argues that, under Fla. Stat. § 48.193(1)(a), Abu-Naba'a operated a business or business venture in Florida, due to "Abu-Naba'a's work in the formation and operation of IOTC." But "[w]hile a corporation itself may be subject to jurisdiction when it transacts business through its agents operating in the forum state, unless those agents transact business on their own account in the state, as opposed to engaging in business as representatives of the corporation, they are not engaged in business so as to be individually subject to the state's long-arm statute." *See Excel Handbag Co. v. Edison Bros. Stores*, 428 So.2d 348, 350 (Fla. 3d DCA 1983). The allegations here show only that Abu-Naba'a "acted in furtherance of [IOTC's] interests in accordance with his role as an agent of the corporation." *Suroor v. First Inv. Corp.*, 700 So.2d 139, 141 (Fla. 5th DCA 1997).

Even were the allegations sufficient, Supreme's assertion of specific jurisdiction would fail the third step of the burden-shifting analysis, for Abu-Naba'a has adequately contested their validity. Abit-Naba'a's and Sargeant's declarations aver that Abu-Naba'a is not employed by IOTC and rarely conducts any business in Florida related to IOTC. Supreme has not sufficiently rebutted this evidence. Therefore, Supreme's assertion of specific jurisdiction over Abu-Naba'a must fail.[2]

Supreme requests leave to take limited discovery on the issue of personal jurisdiction and supplement its opposition to Abu-Naba'a's motion. "[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 9 n.13 (1978). The Eleventh Circuit has indicated that jurisdictional

---

[2] It is unclear whether Supreme is attempting to assert jurisdiction over Abu-Naba'a because of his ownership interest in ITOC. To the extent it is, the court notes that in Florida, "the actions of a corporation cannot be imputed to its shareholders for purposes of establishing long arm personal jurisdiction over the shareholder." *Suroor*, 700 So.2d at 141.

discovery is highly favored before dismissing a defendant for want of personal jurisdiction. *See, e.g., Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731; *Majd-Pour v. Georgiana Cmty. Hosp., Inc.*, 724 F.2d 901, 903 ("[a]lthough the plaintiff bears the burden of proving the court's jurisdiction, the plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction"). On the basis of this authority, the court concludes that narrowly tailored discovery on the issue of personal jurisdiction as to Abu-Naba'a is appropriate.

### 2.  *Forum Non Conveniens*

Defendants argue that Jordan is a more appropriate forum and that this case should therefore be dismissed for forum non conveniens.

The doctrine of forum non conveniens "authorizes a trial court to decline to exercise its jurisdiction, even though the court has venue, where it appears that the convenience of the parties and the court, and the interests of justice indicate that the action should be tried in another forum." *Ford v. Brown*, 319 F.3d 1302, 1306-07 (11th Cir. 2003) (citing *Sibaja v. Dow Chem. Co.*, 757 F.2d 1215, 1218 (11th Cir. 1985)). A defendant seeking dismissal on forum non conveniens grounds bears the burden of demonstrating: (1) that an adequate alternative forum is available; (2) that relevant public and private interests weigh in favor of dismissal; and (3) that the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-62 (1981); *Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1356-57 (11th Cir.2008).

### a. *Alternative Forum*

First, defendants must show that an adequate alternative forum is available. *Leon*, 251 F.3d at 1311. "An alternative forum is 'available' to the plaintiff when the foreign court can assert

jurisdiction over the litigation sought to be transferred." *Id.*

Defendants have carried their burden of showing availability.[3] Defendants Sargeant and IOTC have stipulated that they would submit themselves to the jurisdiction of the appropriate Jordanian court. *See Lisa, S.A. v. Gutierrez* Mayorga, 441 F. Supp. 2d 1233, 1236 (S.D. Fla. 2006); *Callasso v. Morton & Co.,* 324 F. Supp. 2d 1320, 1330-31 (S.D. Fla.2004) (forum is "available" when defendant consents to jurisdiction there). Further, defendants IOTC Jordan and Abu Nab'a are citizens of Jordan and, according to the declaration of Al Smadi, are subject to jurisdiction there. Jordan is thus an available forum.

### b. Adequacy of Forum

Defendants also carry the burden of showing that Jordan is capable of affording adequate relief to Supreme. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254; *Leon,* 251 F.3d at 1311. Defendants must demonstrate that "the alternative forum offers at least some relief," *Leon*, 251 F.3d at 1311, and permits "litigation of the subject matter of the dispute," *Piper*, 454 U.S. at 255 n.22. Defendants need not prove that the alternative forum would be "a perfect forum," only that it would provide an adequate remedy. *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283-84 (11th Cir. 2001). A remedy is inadequate only in the "rare circumstances" where it is so "clearly unsatisfactory" that it amounts to "no remedy at all." *Piper*, 454 U.S. at 254; *see Aldana v. Del Monte Fresh Produce N.A., Inc*, 578 F.3d 1283 (11th Cir. 2009).

Defendants argue that Jordan is an adequate forum because Supreme would be able to assert its core antitrust and corruption claims in Jordan. But according to Supreme's expert, Jordanian law

---

[3]Supreme's response does not contest that defendants are amendable to process in Jordan.

does not permit individuals to bring antitrust claims on their own behalf; rather, a public prosecutor would have to initiate an antitrust claim on behalf of the individual. Aldhahab Dec. ¶¶ 3-5. Similar limitations under Jordanian law would also inhibit Supreme's claims for corruption. *Id.*

The court recognizes that defendants need not show that Jordan is a perfect alterative forum; but the inability of Supreme to maintain this suit on its own behalf, and the prospect of a public prosecutor declining to initiate this action at all, is clearly unsatisfactory. This conclusion alone is fatal to defendants' motion to dismiss based on forum non conveniens. The court will nonetheless proceed to analyze the private and public factors.

### c. Private Factors

Private factors include ease of access to evidence in the competing fora, the availability of witnesses and compulsory process over them, the cost of obtaining evidence, and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *see Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052, 1059 (11th Cir. 2009). Normally, private factors weigh in favor of a plaintiff residing in the forum state and there is thus a "presumption of convenience to U.S. residents suing in U.S. courts." *Newvac*, 584 F.3d at 1059 (citations omitted). "This deference, though still applicable, is weakened when plaintiffs are non-U.S. residents." *Id.*

Defendants contend that the Southern District of Florida is an excessively burdensome forum because sources of proof necessary to the resolution of this dispute are located in the Middle East and many key witnesses, including the Jordanian officials allegedly involved in the conspiracy, are located in Jordan. Defendants argue that the costs involved in securing the attendance of these witnesses, hiring translators for non-English speaking witnesses, and producing evidence located

overseas would be significant.

The court credits defendants' argument that litigation in the United States would be expensive and inconvenient, but recognizes that trying the case in Jordan would be similarly burdensome and inconvenient. Supreme has shown that, while some evidence is located overseas, other significant evidence, witnesses, and parties are located in the United States, and that the alleged conspirators include not just Jordanian companies and officials, but also a U.S. company (IOTC) and a U.S. resident (Sargeant). Thus, given that Supreme's choice of form is entitled to some deference, and that defendants have not shown that Jordan would be a more convenient forum than the United States, the court holds that the private factors do not weigh in favor of a forum non conveniens dismissal.

### d. Pubic factors

Public interest factors include: (1) the forum's interest in entertaining the suit; (2) court congestion and jury duty generated by the lawsuit; (3) the desirability of having localized controversies decided at home; and (4) the difficulty in determining applicable law and applying foreign law. *Newvac*, 584 F.3d at 1061. The application of these factors here does not weigh in favor of Jordan being the proper forum. One the one hand, the resolution of this case might require the application of foreign law, and antitrust cases are often complicated. One the other hand, the complaint does not allege a dispute local to Jordan, but instead a far reaching conspiracy whose effects are felt largely in the United States. The conspiracy alleged involves a U.S. citizen and a U.S. company, and the United States, although not a party to this action, is the main target and victim of the alleged conspiracy. The United States thus has an interest in entertaining this suit. On the balance, the public factors do not weigh in favor of dismissal.

13

For these reasons, the court denies defendants' motion to dismiss for forum non conveniens.

### 3. Adequacy of Complaint

Defendants argue that Supreme's amended complaint contains insufficient factual allegations to survive a motion to dismiss. The court has carefully considered defendants' argument, reviewed the evolving case law on the pleading requirements of Fed. R. Civ. P. 8(a)(2), and examined Supreme's amended complaint. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009); *Bell Atl. Corp. v. Townbly,* 550 U.S. 544 (2007); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252 (11th Cir. 2009). The court is of the opinion that the well-plead factual allegations in Supreme's complaint, taken as true, plausibly suggest that Supreme is entitled to relief for its claims. *See Iqbal*, 129 S.Ct. at 1948 (plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). In other words, Supreme has "nudged [its] claims across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570. Therefore, the court will deny Defendants' motion to dismiss for failure to state a claim upon which relief can be granted.

## CONCLUSION

According, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendants' motion to dismiss [DE # 19] is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Abu-Naba'a's motion to dismiss for insufficient service of process and want of personal jurisdiction is **GRANTED**. Supreme is permitted to serve *written* jurisdictional discovery (interrogatories and requests for production of documents) on Abu-Naba'a within twenty (20) days of the date of entry of this order. Discovery **SHALL** be narrowly tailored to personal jurisdiction

Order Granting in Part and Denying in Part Defendants' Motion to Dismiss
Supreme Fuels Trading FZE v. Harry Sargeant III, et al.
Case No. 08-81215-CIV-HURLEY/HOPKINS

  issues implicated by the motion to dismiss. The parties **SHALL** confer and cooperate in good faith to determine the logistics of the discovery. No further jurisdictional discovery will be permitted absent a showing of good cause.

 b. Within ten (10) days of receiving responses to the discovery requests, Supreme may file an second amended complaint. Within twenty (20) days of the filing of Supreme's seconded amended complaint, Abu-Naba'a is permitted to move to dismiss for insufficient service of process or want of personal jurisdiction.

 c. Defendants' motion to dismiss is otherwise denied.

 **DONE** and **SIGNED** in Chambers in West Palm Beach, Florida, this 17th day of December, 2009.

            _____
            Daniel T. K. Hurley
            U.S. District Judge

*Copies provided to counsel of record*